IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SCOTT EWING,

          Plaintiff,

     v.

OLINGER RV CENTERS, LLC,
dba Camping World RV Sales,

          Defendant.

Civ. No. 6:24-cv-01348-AA

**OPINION & ORDER**

AIKEN, District Judge.

This case comes before the Court on a Motion to Compel Arbitration, ECF No. 7, filed by Defendant Olinger RV Centers, LLC. For the reasons set forth below, the motion is GRANTED and this case is STAYED pending the outcome of arbitration.

## LEGAL STANDARDS

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Courts may decline to enforce an arbitration agreement if grounds "exist at law or in equity for the revocation of any contract." *Id.* Otherwise, courts must treat arbitration agreements the same as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "Courts strongly favor arbitration and broadly construe arbitration clauses." *Sanders v. Concorde Career Colls., Inc.*, 3:16-CV-01974-HZ,

2017 WL 1025670, at *2 (D. Or. Mar. 16, 2017). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) internal quotation marks and citations omitted). "The standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

When evaluating a motion to compel arbitration, courts should determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). When determining the validity of an agreement to arbitrate, a court "should apply state-law principles that govern the formulation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If the court finds that there is a valid agreement that encompasses the dispute, then the court must enforce the agreement in accordance with its terms. Arbitration agreements may be invalidated by generally applicable contract defenses, such as duress or unconscionability. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 697 (1996). Upon granting a petition to compel arbitration, district courts must stay the proceedings. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 476-78 (2024).

# BACKGROUND

## I. Factual and Procedural Background

Plaintiff Scott Ewing began working for All Season's RVs in August 2013 at their facility in Bend, Oregon. Compl. ¶ 7. ECF No. 1-3. Plaintiff was the parts and service manager and oversaw both the parts department and the service department. *Id.* at ¶ 8. Plaintiff was a "model employee," and "never received any disciplinary action or poor performance reviews." *Id.* at ¶ 9.

Plaintiff suffers from a polycystic kidney disease, which required the removal of one of his kidneys in October 2022. Compl. ¶ 12. Plaintiff was unable to work for two weeks following the removal of his kidney and he undergoes dialysis every other day for approximately eight hours. *Id.* at ¶¶ 14-15. To avoid conflict with his work, Plaintiff performs the dialysis at night. *Id.* at ¶ 16. Plaintiff is currently on the transplant list for a donor kidney. *Id.* at ¶ 17.

Defendant Olinger RV Centers, LLC, dba Camping World RV Sales, purchased All Season's RV in June 2023. Compl. ¶ 6. Defendant is "an indirect subsidiary of FreedomRoads, LLC. McLoughlin Decl. ¶ 3. ECF No. 8.

During Defendant's takeover of All Season's RV, Plaintiff's supervisor communicated to Defendant's management that Plaintiff "had a serious medical condition involving his kidneys." Compl. ¶ 10. Plaintiff's supervisor told Plaintiff that he should not worry because Defendant "was aware of his condition and it should not be a problem." *Id.* at ¶ 11.

On June 9, 2023, Defendant formally offered Plaintiff employment as the operations manager of their Bend location, which entailed managing only the service department. Compl. ¶¶ 19-20. Plaintiff accepted the position and Defendant's staff were told that no personnel changes would occur until after January 1, 2024. *Id.* at ¶¶ 21-22.

In July 2023, Defendant held a party "for proficiency in sales numbers in the service department which [Plaintiff] managed." Compl. ¶ 23. In August 2024, sales numbers for Plaintiff's department were above average. *Id.* at ¶ 24.

On September 5, 2023, Plaintiff was terminated for performance and was told the "numbers are not where we need them to be." Compl. ¶ 25. This was the first time Plaintiff had heard of any issues or concerns regarding his employment performance. *Id.* at ¶ 26.

Plaintiff filed this action in Deschutes County Circuit Court on July 9, 2024, alleging disability discrimination. ECF No. 1. Defendant timely removed the case to federal court on August 16, 2024. The present motion followed.

## II. Arbitration Agreement

On June 9, 2023, Plaintiff was sent a formal offer of employment with Defendant, to begin on June 21, 2023. McLoughlin Decl. Ex. A.

As part of the offer of employment, Plaintiff was presented with an Arbitration Agreement (the "Agreement"). McLoughlin Decl. Ex. B. Under the terms of that agreement, Plaintiff and Defendant "mutually agree that any and all claims or disputes described in paragraph 2" of the Agreement that Plaintiff "may

have now or in the future with or against FREEDOMROADS, LLC, Inc., any parent or subsidiary of, or any Company affiliated with FREEDOMROADS, LLC, Inc. . . . may be heard by a neutral mediator mutually selected by the Company and the Associate; and that if mediation of a dispute by Associate or FREEDOMROADS, LLC, Inc. is unsuccessful, the claim or dispute shall be submitted to arbitration and heard and decided by a neutral arbitrator from the AAA [American Arbitration Association] roster of employment dispute arbitrator or equivalent roster of employment dispute arbitrators to which the parties agree." *Id.* at 1.

Among the disputes listed in paragraph 2 of the Agreement are "all claims or controversies, whether or not arising out of employment or termination of employment that would constitute a cause of action in a court, including but not limited to . . . claims for discrimination or other employment-related claims." McLoughlin Decl. Ex. B, at 1.

The Agreement provides that the arbitrator's decision shall be final and binding on both parties. McLoughlin Decl. Ex. B, at 2. The parties to the Agreement acknowledged that "arbitration is a substitute for traditional litigation and hereby waive their respective rights to file a private lawsuit and have that suit heard in court by a judge or a jury." *Id.* The Agreement "shall survive the termination of Associate's employment and shall apply to any claim or dispute, whether it arises or is asserted before, during or after the Associate's employment with FREEDOMROADS, LLC, Inc." *Id.* at 3.

The parties agreed that the Federal Arbitration Act would govern the Agreement and acknowledged that "[e]ither party may bring an action in any proper court to require arbitration under the Agreement and to enforce an arbitration award." McLoughlin Decl. Ex. B, at 2. "Arbitration under this Agreement may be enforced under the terms of the Federal Arbitration Act, and judicial review shall be limited, as provided by law." *Id.*

The Agreement states that the use of an electronic signature demonstrates acceptance of the Agreement and states that the electronic signature "is as legally binding as an ink signature." McLoughlin Decl. Ex. B, at 3.

As part of the hiring process, Defendant's employees were presented with a copy the Agreement through Defendant's electronic onboarding process, using the "ADP Onboarding application within ADP Vantage." Waddington Decl. ¶ 8. ECF No. 13. Employees register in the application by creating a unique username and password and providing answers to security questions. *Id.* at ¶ 9. Defendant does not have access to the password or the answers to the security questions. *Id.*

During the electronic onboarding process, an employee reviews the Agreement. Waddington Decl. ¶ 10. After reviewing the Agreement and its accompanying manual, employees are prompted to check an "Acknowledgment" which reads "By clicking Acknowledge Policy, I acknowledge that this serves as the electronic representation of my signature, including legally binding contracts—just as wet ink on a paper signature would." *Id.*; Ex. B, at 6.

Plaintiff registered an account with the ADP Onboarding system on June 19, 2023, with a User ID of "Scott.ewing66." Waddington Decl. ¶ 11; Ex. C.

A Policy Acknowledgement Status Report was created on July 18, 2024, showing that Plaintiff acknowledged the Agreement on June 21, 2023. McLoughlin Decl. Ex. C. The Report shows that the acknowledgment was made using Plaintiff's User ID and Employee ID. *Id.* "Only someone with knowledge of the unique, secure password created for Plaintiff's account in the ADP Onboarding system would have been able to open, view, and electronically accept the Agreement for Plaintiff's account with the username Scott.ewing66." Waddington Decl. ¶ 13.

Plaintiff "do[es] not recall reviewing, receiving, or signing an arbitration agreement with Camping World during my employment." Ewing Decl. ¶ 7. ECF No. 11-1.

## 'DISCUSSION

Defendant seeks to compel arbitration in this matter, pursuant to the Agreement. Defendant urges the Court to compel arbitration and either dismiss or stay this case pending the outcome of arbitration. Plaintiff opposes the motion to compel, disputing the validity of the Agreement and arguing that the Agreement is unconscionable.

### I.     Notice and Production of the Agreement

In response to Defendant's Motion, Plaintiff suggests that the Agreement is not enforceable because Plaintiff did not receive notice that he would need to sign the

Agreement as a condition of employment and because Defendant did not include the Agreement when it produced Plaintiff's personnel file pursuant to ORS 652.750(2).

As to the first issue, Plaintiff cites no authority for the suggestion that failure to provide advance notice of the Agreement would impair Defendant's right to rely on the Agreement. To the extent Plaintiff seeks to invoke the notice requirements of ORS 36.620(5), courts within this district have held that those requirements are preempted by the FAA. *See Brock v. Copart of Wash., Inc.*, 3:18-CV-02012-BR, 2019 WL 959591, at *4-5 (D. Or. Feb. 27, 2019) (so holding). The Court concurs with that reasoning.

With respect to the production of the agreement, ORS 652.750(2) requires that an employer provide a reasonable opportunity for an employee to inspect "the personnel records of the employee that are used or have been used to determine the employee's qualification for employment, promotion, additional compensation, employment termination or other disciplinary action and time and pay records of the employee for the period required by the Fair Labor Standards Act, 29 U.S.C. 211(c), and accompanying regulations." ORS 652.750(2). The Agreement does not fall within any of the categories listed in the statute and so Defendant was not obligated to produce it in response to Plaintiff's request. Furthermore, courts within this District have held that, even if production an arbitration agreement *were* required under ORS 652.750, it does not follow that a defendant employer is estopped from relying on the agreement. *Harshman v. J-M Pipe Co., Inc.*, No. 2:23-cv-01600-HL, 2024 WL 1641670, at *3 (D. Or. Jan. 26, 2024). The Court concurs with that reasoning and

declines to find that non-production of the Agreement in response to a pre-litigation demand would serve as an impediment to enforcement of the Agreement.

## II.     Plaintiff's Acceptance of the Agreement

Plaintiff asserts that the Agreement is not enforceable because it does not bear his signature. As noted, Plaintiff does not recall receiving, reviewing, or acknowledging the Agreement. However, Defendant has demonstrated through the Waddington Declaration and its supporting exhibits that the Agreement was acknowledged by Plaintiff on a specific date using Plaintiff's unique username and secure password.

Oregon law provides that electronic signatures may bind an individual. ORS 84.004(8); ORS 84.019. In *Giselle v. Jack in the Box, Inc.*, 427 F. Supp.3d 1276 (D. Or. 2019), the court found that procedures similar to those described in the Waddington Declaration were sufficient to establish that the plaintiffs had electronically signed an arbitration agreement in a legally binding and acceptable manner. *Id.* at 1292-93. The Court concludes, on this record, that Plaintiff did electronically sign the Agreement and that Plaintiff's present inability to recall doing so will not preclude Defendant from enforcing the Agreement.

## III.     Parties to the Agreement

Plaintiff asserts that Defendant is not a party to the Agreement, which is between himself and FreedomRoads, LLC, Inc.. However, the plain terms of the Agreement state that it is "by and between a subsidiary of FREEDOMROADS, LLC, Inc. (Entity) and the undersigned associate of that subsidiary." McLoughlin Decl. Ex.

B, at 1; *see also id.* at 2 ("This Agreement applies to employment with any entity owned, controlled by or related to FREEDOMROADS, LLC, Inc., no matter where located."). As noted, Defendant is an indirect subsidiary of FreedomRoads, LLC. McLoughlin Decl. ¶ 3. The Court concludes that Defendant is a party to the Agreement.

### IV. Consideration

Plaintiff also asserts that the Agreement lacks consideration. However, the terms of the Agreement state that the consideration involved is "an offer of employment or continued employment," and "the compensation and job benefits that Associate has and/or will receive," as well as "the benefits of the speedy, impartial, and cost-effective dispute resolution procedure" of arbitration, and "the mutual promises made by" Plaintiff and Defendant. McLoughlin Decl. Ex. B, at 1. "Oregon courts do not require anything more than continued employment for signing an arbitration agreement." *Wilson v. Bristol-Myers Squibb Co.*, Case No. 3:17-cv-2054-SI, 2018 WL 2187443, at *4 (D. Or. May 11, 2018). The Court concludes that there was consideration in the form of Plaintiff being hired as operations manager by Defendant following the takeover of Plaintiff's previous employer.

### V. Unconscionability

Plaintiff asserts that the Agreement is unconscionable. "Unconscionability is a generally applicable defense that may render an agreement to arbitrate unenforceable." *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009). "[U]nconscionability is a question of law that must be determined based on the facts

in existence at the time the contract was made." *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 614 (2007). The party asserting unconscionability bears the burden of proof. *Id.*

Here, Plaintiff asserts that the Agreement is unconscionable because it is a "one-sided agreement drafted by the other party in which he was expected to give up certain rights, such as the right to trial by jury, and receive nothing in return" from Defendant. Pl. Resp. 6. Plaintiff asserts that the Agreement was not the product of negotiation but was a "take it or leave it scenario" in which Plaintiff's employment would only continue if he signed the Agreement. *Id.* Plaintiff also asserts that Defendant failed to disclose in its offer letter that the Agreement was a mandatory condition of employment.

In Oregon there are two components of unconscionability: procedural and substantive unconscionability. *Motsinger*, 211 Or. App. at 614. The Court will address each in turn.

### A. Procedural Unconscionability

Procedural unconscionability concerns the conditions under which the contract was formed. *Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 567 (2007). The analysis of procedural unconscionability has two prongs: oppression and surprise. *Tapley v. Cracker Barrel Old Country Store, Inc.*, 448 F. Supp.3d 1143, 1149 (D. Or. 2020). "Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice." *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App.

137, 151 (2010). For surprise, courts assess whether there were hidden terms, "such as ambiguous contract wording and fine print." *Wilson*, 2018 WL 2187443, at *4 (internal quotation marks and citation omitted).

Here, as noted, Plaintiff primarily relies on the fact that the Agreement is a contract of adhesion and that Plaintiff lacked equal bargaining power. "But without a showing of deceit or compulsion," such a contention "is insufficient to establish procedural unconscionability." *Tinsley*, 448 F. Supp.3d at 1149. "Oregon courts have consistently held that more than a contract of adhesion and unequal bargaining power is required to void an arbitration agreement." *Id.* (internal quotation marks and citations omitted, alterations normalized).

To the extent that Plaintiff argues there was surprise because there was no mention of the Agreement in Plaintiff's offer letter, that is similarly insufficient. As set forth in the previous section, the FAA preempts Oregon's statutory notice requirements. And, for purposes of procedural unconscionability, surprise requires ambiguous or hidden terms or fine print. *Wilson*, 2018 WL 2187443, at *4. There are no such terms in the Agreement, which clearly identifies itself as an arbitration agreement and explains its terms in plain language.

The Court concludes that Plaintiff has failed to establish procedural unconscionability.

### B. Substantive Unconscionability

"Under Oregon law, the emphasis is clearly on substantive unconscionability." *Tapley*, 448 F. Supp.3d 1150 (internal quotation marks and citation omitted).

"Substantive unconscionability generally refers to the terms of the contract, rather than the circumstances of formation, and focuses on whether the substantive terms contravene the public interest or public policy." *Siggelkow v. Northwest Grp., Inc.*, No. 3:18-cv-01494, 2019 WL 294759, at *7 (D. Or. Jan. 22, 2019) (internal quotation marks and citation omitted). "Terms relevant to substantive unconscionability include one-sided discovery, one-sided coverage, and the allocation of payment of arbitration fees." *Id.* at *8.

Here, Plaintiff does not challenge any particular provision of the Agreement as substantively unconscionable and only identifies the waiver of the right to a trial by jury as problematic. Waiver of jury trial is an inherent part of arbitration, however, and the Agreement is very clear on this point. There is a well-established public policy favoring arbitration and the Court cannot conclude that the waiver of a jury trial, a key feature of arbitration, is contrary to public policy. The Court concludes that the Agreement is not substantively unconscionable. The Court also notes that, except for a $50 initiation fee, Defendant is to pay the administrative costs of arbitration under the Agreement. McLoughlin Decl. Ex. B, at 13-14. This also weighs against substantive unconscionability.

In sum, the Court concludes that the Agreement is a valid arbitration agreement and that the Agreement, by its terms, encompasses the dispute at issue. The Motion to Compel Arbitration will therefore be granted.

## VI. Stay of Proceedings

Defendant has requested, should the Court grant their Motion to Compel Arbitration, that this case be dismissed. The Court acknowledges that, until very recently, district courts within the Ninth Circuit exercised discretion to dismiss cases sent to arbitration if all the claims in the case were subject to arbitration. However, the Supreme Court has clarified that the proper course of action, under the plain terms of the FAA, 9 U.S.C. § 3, is to stay the case. *Smith*, 601 U.S. at 474-78. Consistent with that guidance, the Court will stay the case pending arbitration.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel Arbitration, ECF No. 7, is GRANTED and the parties are directed to proceed to arbitration as set forth in the Arbitration Agreement. This case is STAYED pending the outcome of arbitration. The parties are directed to notify the Court within fourteen (14) days of the date of the arbitrator's final determination so that the Court may proceed with the disposition of this federal action.

It is so ORDERED and DATED this ___18th___ day of October 2024.

                                       /s/Ann Aiken
                                       ANN AIKEN
                                       United States District Judge